U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 2 2 2013

CLERK, U.S. DISTRICT COURT
By_____
        Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

KELLY HORTON, ET AL.,           §
                                §
        Plaintiffs,             §
                                §
VS.                             §    NO. 4:13-CV-525-A
                                §
M&T BANK, SUCCESSOR BY MERGER   §
TO M&T MORTGAGE CORPORATION,    §
ET AL.,                         §
                                §
        Defendants.             §

MEMORANDUM OPINION
and
ORDER

Before the court for decision are two motions to dismiss

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

filed in the above action: one filed by defendant Barrett Daffin

Frappier Turner & Engel, L.L.P. ("Barrett Daffin"), and the other

by defendants M&T Bank, Bayview Loan Servicing, LLC ("Bayview"),

and Federal Home Loan Mortgage Corporation ("FHLMC")

(collectively, the "Bank Defendants"). Plaintiffs, Kelly Horton

("Kelly") and Gary Horton ("Gary"), filed a response to each of

the motions, and defendants filed replies. Having now considered

all of the parties' filings, plaintiffs' second amended

complaint, and the applicable legal authorities, the court

concludes that Barrett Daffin's motion should be granted, and

1

that Bank Defendants' motion should be granted in its entirety as
to FHLMC, and granted in part and denied in part as to M&T Bank
and Bayview.

I.

### Background and Plaintiffs' Pleaded Claims

Plaintiffs initiated this action by filing their original
petition and application for temporary restraining order in the
District Court of Tarrant County, Texas, 342nd Judicial District.
Plaintiffs subsequently filed a first amended original petition
in the state court, and Barrett Daffin removed the case to this
court.  The court thereafter ordered plaintiffs to file an
amended complaint that complied with the requirements of the
Federal Rules of Civil Procedure.  Plaintiffs then filed their
second amended complaint, to which the motions to dismiss are
directed, in which plaintiffs alleged the following:

On or about August 31, 2006, Kelly signed a promissory note,
secured by a deed of trust, for the purchase of property on Park
Place Drive in Richland Hills, Texas.  Sometime during 2012, M&T
Bank acquired the note and deed of trust.  Bayview is the
servicer of the note on behalf of M&T Bank.

On March 12, 2012, Kelly and Bayview entered into a
repayment agreement that indicated plaintiffs owed a past-due
amount of $2,866.45, which included "all payments due but

2

unpaid," as well as any applicable late charges and other fees. Second Am. Compl. at 3. The repayment agreement required plaintiffs to tender a down payment in the amount of $930.11 on March 12, 2012, followed by five monthly payments in the amount of $1,294.55 each, beginning April 12, 2012, and ending August 12, 2012. Plaintiffs made each of the payments. "Once [the] last payment was paid and accepted by Bayview, the Repayment Agreement was completed as agreed, and [the] loan reinstated and placed in a current status." Id. at 4.

During August, Kelly spoke to an employee of Bayview named Tony Acosta ("Acosta") regarding her payment schedule following completion of the repayment agreement. Acosta informed Kelly that as of September 2012, her payments would be the amount stated in the deed of trust. Acosta also informed Kelly that she would need to send payments directly to M&T Bank. Neither Acosta nor anyone from M&T Bank or Bayview discussed with Kelly any problems with plaintiffs' account in August 2012. Prior to the execution of the repayment agreement, defendants had never sent plaintiffs a notice of default or of intent to accelerate the loan, nor any notice of a foreclosure sale. At some point, M&T Bank sent plaintiffs a notice stating an incorrect amount purportedly due as of September 2012, stating that M&T Bank was acting as mortgage servicer for FHLMC.

In December 2012, during the week between Christmas and New Year's Day, Acosta left a message asking Kelly to call him. Kelly did not return Acosta's call until January 2, 2013; at that time Acosta was unavailable, so Kelly spoke to another individual.  The individual informed Kelly that the property had been sold at a foreclosure sale on January 1, 2013.  When Kelly was finally able to talk to Acosta, he initially seemed confused about why the property had been foreclosed.  Acosta eventually spoke to a supervisor, who told him Kelly paid the August 2012 payment two days late.  Consequently, late fees and attorney's fees were added into the amount owed, and the repayment agreement was cancelled.

Kelly learned that Barrett Daffin had handled the foreclosure.  On January 2, 2013, Kelly contacted Barrett Daffin and spoke to an individual named Roman.  Roman told Kelly that on November 15, 2012, Barrett Daffin sent her a notice of trustee sale for the January foreclosure sale.  Neither Kelly nor Gary received the November 15, 2012 notice.  When Barrett Daffin sent a copy of the notice to plaintiffs' counsel, it was dated December 5, 2012, stating it was "in lieu of" the November 15, 2012 notice.

Plaintiffs were unaware that the property was subject to a foreclosure sale in January 2013.  Barrett Daffin told plaintiffs

4

that FHLMC now owned the property, so Barrett Daffin could not assist them.  Bayview also has not offered plaintiffs any assistance.  Plaintiffs have been threatened with eviction by FHLMC.  Kelly's 72-year-old father, who has macular degeneration in both eyes, lives on the property, along with his son[1] and three other children.  Defendants' wrongful acts have created mental anguish for plaintiffs, and the fear of eviction by FHLMC has created "undue stress and health problems for Kelly's father" and others living on the property.  Id. at 8.

Plaintiffs alleged claims and causes of action against M&T Bank and Bayview for breach of contract; against M&T Bank, Bayview, and Barrett Daffin for unreasonable collection efforts, wrongful foreclosure, and violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a, et seq.; and against all defendants for trespass to real property and to quiet title/void substitute trustee's deed.  Plaintiffs also sought injunctive relief to prevent their eviction from the property.

## II.

### Grounds of the Motions

Barrett Daffin contends that all of plaintiffs' claims against it are barred by the doctrine of qualified immunity.

---

[1]The second amended complaint does not specify whose son lives on the property.

Bank Defendants argue that plaintiffs have failed to state a claim for breach of contract because the second amended complaint improperly presumes that plaintiffs were current on their loan for the property, plaintiffs had defaulted on the repayment agreement, the claim that default and acceleration notices were not sent is contradicted by the face of the complaint, and the claim that defendants violated any duty of good faith and fair dealing is contradicted by well-established authority.

As to the remaining causes of action, the court is combining the grounds for relief presented in the motions. Defendants argue that dismissal is warranted because: plaintiffs failed to identify any conduct or allege any facts sufficient to state a claim of unreasonable collection efforts; plaintiffs' claim for wrongful foreclosure fails because plaintiffs' possession of the property has not been disturbed, and because they failed to allege any causal connection between any alleged defects in the foreclosure sale and any inadequate selling price; plaintiffs have identified no facts attributable to any defendant as would state a claim of trespass to real property, including failing to allege that any defendant entered onto their property; plaintiffs failed to allege facts to show they are entitled to prevail on their claim to quiet title; plaintiffs failed to allege that they are consumers, or that defendants are debt collectors, under the

FDCPA, nor have they alleged sufficient facts to state a claim
under the FDCPA as to defendants; and, if all of plaintiffs'
claims are dismissed pursuant to the motions, no causes of action
exist on which to ground plaintiffs' request for injunctive
relief.

III.

## Standards Applicable to Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure
provides, in a general way, the applicable standard of pleading.
It requires that a complaint contain "a short and plain statement
of the claim showing that the pleader is entitled to relief,"
Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair
notice of what the claim is and the grounds upon which it rests."
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal
quotation marks and ellipsis omitted).  Although a complaint need
not contain detailed factual allegations, the "showing"
contemplated by Rule 8 requires the plaintiff to do more than
simply allege legal conclusions or recite the elements of a cause
of action.   Id. at 555 & n.3.  Thus, while a court must accept
all of the factual allegations in the complaint as true, it need
not credit bare legal conclusions that are unsupported by any
factual underpinnings.  See Ashcroft v. Iqbal, 556 U.S. 662, 679
(2009) ("While legal conclusions can provide the framework of a

7

complaint, they must be supported by factual allegations.")

Moreover, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible.  Id. at 678.  To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Twombly, 550 U.S. at 566-69.  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.  In adjudicating a motion to dismiss, the court may consider the complaint and its proper attachments.

IV.

**Application of Law to Facts**[2]

A.  **Qualified Immunity**

Barrett Daffin argues that all of plaintiffs' claims against it should be dismissed on the basis of qualified immunity.  The court is not persuaded that the qualified immunity doctrine sweeps as broadly as Barrett Daffin suggests in its motion. Accordingly, the court rejects that ground for relief.

---

[2]For efficiency, the court is combining its discussion and analysis of the motions to dismiss, except as otherwise noted.

8

B.   <u>Breach of Contract</u>

Bayview and M&T Bank have not shown that dismissal is warranted at this stage of the proceedings as to plaintiffs' claim for breach of contract, with one exception: plaintiffs have failed to state a claim for the violation of a duty of good faith and fair dealing.

Relying on sections 1.201(20) and 9.102(c) of the Texas Business and Commerce Code, plaintiffs allege that under the Texas Uniform Commercial Code ("UCC"), a duty "of good faith and fair dealing is included in the performance of every contract." Second Am. Compl. at 11.[3]   Plaintiffs allege that their "mortgage note is a negotiable instrument governed by the Uniform Commercial Code," and that the "Uniform Commercial Code provides that every contract or duty imposes an obligation of good faith in its performance and enforcement."   <u>Id.</u> (quoting section 1.304 of the Texas UCC).

Plaintiffs' reliance on the UCC is misplaced.   Section 1.201(20) of the UCC defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair

_____

[3]In both the second amended complaint and their response to Bank Defendants' motion to dismiss regarding the alleged duty of good faith and fair dealing, plaintiffs cite to the case of <u>Belyea v. Litton Loan Servicing, LLP</u>, Civil Action No. 10–10931–DJC, 2011 WL 2884964 (D. Mass. July 15, 2011). Plaintiffs do not, however, attempt to explain how a case from the district court of Massachusetts, interpreting Massachusetts law, supports their claim for violation of a duty they contend is imposed by Texas law.

dealing." Section 9.102(c) merely states that "[c]hapter 1 contains general definitions and principles of construction throughout this chapter." Neither of these sections imposes any duty on, nor supports a cause of action against, any of the defendants in this action. And, section 9.109(d)(11) provides that chapter nine of the UCC does not apply to "the creation or transfer of an interest in or lien on real property."

Plaintiffs also rely on section 1.304 of the UCC, which imposes an obligation of good faith on "[e]very contract or duty within this title." Tex. Bus. & Com. Code Ann. § 1.304 (emphasis added). However, contrary to plaintiffs' assertions, a mortgage note is not "within" the UCC: "[b]ecause the Deed of Trust places a lien on real property, it is not governed by the UCC." Vogel v. Travelers Indem. Co., 966 S.W.2d 748, 753 (Tex. App.--San Antonio 1998, no pet.) (emphasis in original). The comments to section three of the UCC, concerning negotiable instruments, also could not be more clear: "Article 3 is not meant to apply to contracts for . . . the sale or lease of real property or similar writings that may contain a promise to pay money." Tex. Bus. & Com. Code § 3.104, Cmt. 2.[4]

---

[4]"The UCC official commentary is an authoritative interpretation of the Code." Jones v. Wells Fargo Bank, N.A., 666 F.3d 955, 960 n.5 (5th Cir. 2012). Texas courts consider the comments as providing valuable guidance pertaining to the meaning and purpose of the Texas UCC. Id. "Barring a contrary interpretation from the Texas courts," the court is guided by the official commentary. Id.

Additionally, as argued in Bank Defendants' motion, Texas courts generally do not impose a duty of good faith and fair dealing in the mortgagor/mortgagee relationship. See, e.g., FDIC v. Coleman, 795 S.W.2d 706, 709 (Tex. 1990).

The sum of the foregoing is that the second amended complaint fails to state a claim against M&T Bank and Bayview for breach of the duty of good faith and fair dealing.

C. Unreasonable Collection Efforts

Unreasonable collection is an intentional tort, the exact contours of which are not clearly defined. Thomas v. EMC Mortg. Corp., 499 F. App'x 337, *341 (5th Cir. 2012); EMC Mortg. Corp. v. Jones, 252 S.W.3d 857, 868 (Tex. App.--Dallas 2008, no pet.). The Fifth Circuit has recognized as "one of the more precise legal descriptions" conduct that amounts to "a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." Massey v. EMC Mortg. Corp., ___ F. App'x ____, NO. 12-10993, 2013 WL 5913753, at *5 (5th Cir. Nov 05, 2013) (per curiam) (quoting Jones, 252 S.W.3d at 868).

No facts are alleged in the second amended complaint showing any conduct by defendants that amounts to a course of "willful, wanton, malicious" harassment that was "intended to inflict mental anguish and bodily harm." The only conduct attributed to

Barrett Daffin in support of this claim is that it "failed to give Plaintiffs a chance to reinstate or cure the default by not providing the proper notices required under the FDCPA." Second Am. Compl. at 14. Such acts by Barrett Daffin come nowhere near the standard required to establish a claim of unreasonable collection efforts.

Similarly, plaintiffs allege only that M&T Bank and Bayview failed to give them a chance to reinstate or cure the default on their loan, assessed late charges and penalties without providing an accounting to plaintiffs about the additional charges,[5] and improperly placed the property in foreclosure. These allegations may show a failure of M&T Bank and Bayview to properly communicate with plaintiffs, or that these defendants were negligent in their handling of plaintiffs' account. However, such allegations are insufficient to state a claim for unreasonable collection efforts. See e.g., Water Dynamics, Ltd. v. HSBC Bank USA, Nat'l Ass'n, 509 F. App'x 367, 369-70 (5th Cir. 2013) (per curiam). Nor does the second amended complaint allege any facts to show that defendants engaged in conduct, the intent of which was to cause plaintiffs mental anguish or bodily harm.[6]

---

[5]The second amended complaint does not allege that plaintiffs requested an accounting.

[6]Although the second amended complaint states that M&T Bank and Bayview "intentionally misled and delayed Plaintiffs to an actual foreclosure," Second Am. Compl. at 14, it contains no facts to support this conclusory assertion.

Plaintiffs also cited to no authority holding that conduct similar to that alleged against M&T Bank and Bayview constitutes unreasonable collection efforts.

Instead, plaintiffs urge the court to define unreasonable collection efforts as "efforts which an ordinary person of ordinary prudence in the exercise of ordinary care on his or her part would not have exercised under the same or similar circumstances." Pls.' Resp. and Br. in Opp'n to Def. Barrett Daffin's Mot. to Dismiss ("Pls.' Resp. I") at 7 (quoting Employee Fin. Co. v. Lathram, 363 S.W.2d 899, 901 (Tex. Civ. App.--Fort Worth 1962), rev'd on other grounds, 369 S.W.2d 927 (Tex. 1963)); Pls.' Resp. and Br. in Opp'n to Defs. M&T Bank, Bayview, and FHLMC's Mot. to Dismiss Pls.' Compl. ("Pls.' Resp. II") at 8. As the Fifth Circuit observed, however, the Lathram standard "has largely been disavowed by Texas courts." Thomas, 499 F. App'x at *342; De Franceschi v. BAC Home Loans Servicing, L.P., 477 F. App'x 200, 205 (5th Cir. 2012). See also Water Dynamics, Ltd., 509 F. App'x at 370 (recognizing that Jones describes "the standard for claims of unreasonable collection efforts."). The court is thus not considering plaintiffs' definition of unreasonable collection efforts.

D. <u>Wrongful Foreclosure</u>

To prevail on a claim of wrongful foreclosure in Texas

requires plaintiffs to show "(i) a defect in the foreclosure sale proceedings; (ii) a grossly inadequate selling price; and (iii) a causal connection between the defect and the grossly inadequate selling price." Miller v. BAC Home Loans Servicing, L.P., 726 F.3d 717, 726 (5th Cir. 2013) (internal quotation marks omitted) (quoting Sauceda v. GMAC Mortg. Corp., 268 S.W.3d 135, 139 (Tex. App.--Corpus Christi 2008, no pet.)). Defendants argue for dismissal on the grounds that plaintiffs failed to allege any facts to show a causal connection between any purported defects and a grossly inadequate selling price. The court agrees.

Plaintiffs claim that defendants failed to provide the required notices prior to foreclosure, which can be considered as alleging a defect in the foreclosure sale proceedings. However, the only allegation concerning the foreclosure sale price is the bald statement that "[d]efendants have sold the Property at a grossly inadequate selling price when you take in consideration of the value of the Property, the amount remaining on the Note and the amount of the sale." Second Am. Compl. at 16 (capitalization in original). No facts are alleged in the second amended complaint pertaining to the value of the property, the amount remaining on the note, or the amount of the sale.

Even less is alleged as to a causal connection. Plaintiffs alleged only that "[d]efendants have purposefully created this

14

defect which they believed allowed them to sell the Property at the grossly inadequate selling price." Id. This conclusory assertion is the type of bare legal conclusion, unsupported by factual underpinnings, that is insufficient to withstand a motion to dismiss.

Dismissal of the wrongful foreclosure claim is further warranted because plaintiffs remain in possession of the property. In a wrongful foreclosure action, "[r]ecovery is conditioned on the disturbance of the mortgagor's possession based on the theory that the mortgagee must have committed a wrong similar to the conversion of personal property." Peterson v. Black, 980 S.W.2d 818, 823 (Tex. App.--San Antonio 1998, no writ) (internal citations omitted). The mortgagor must have suffered some loss of possession to recover for wrongful foreclosure. Id.; John Hancock Mut. Life Ins. Co. v. Howard, 85 S.W.2d 986, 988 (Tex. Civ. App.--Waco 1935, writ ref'd). The mortgagor has sustained no compensable damage when his possession remains undisturbed. Peterson, 980 S.W.2d at 823.

Here, plaintiffs concede that they retain possession of the property. However, they contend that because FHLMC has initiated forcible detainer proceedings against them, the "constant threat of a forcible eviction" sufficiently "disturbs Plaintiffs' possession" and thus adequately alleges a claim for wrongful

15

foreclosure. Pls.' Resp. at 8. Plaintiffs cite to no authority for this proposition. Because plaintiffs retain possession of the property, and because they failed to allege facts to show any causal connection between defects in the foreclosure proceedings and any grossly inadequate selling price, they have failed to state a claim for wrongful foreclosure.

E.  Trespass to Real Property

Trespass to real property occurs when one enters another's property without the other's consent. Wilen v. Falkenstein, 191 S.W.3d 791, 797 (Tex. App.--Fort Worth 2006, pet. denied). To establish a claim of trespass to real property, a plaintiff must show that "(1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff." Id. at 798. Defendants argue that dismissal of this claim is warranted because plaintiffs have not alleged that any defendant entered plaintiffs' land physically, intentionally, and voluntarily, or in any other manner.

In their responses, plaintiffs contend only that Barrett Daffin failed to follow procedures established by the FDCPA. Failing to send notices is not tantamount to a physical entry onto property. Nor have plaintiffs directed the court to

anything in the second amended complaint that alleges any entry of any kind by Barrett Daffin onto plaintiffs' property, and the court's review of the second amended complaint has found none. Plaintiffs' responses also maintain that FHLMC entered onto their property when it foreclosed. No such facts concerning FHLMC are alleged in the second amended complaint. Plaintiffs cannot amend their complaint by allegations raised in response to a motion to dismiss. Accordingly, this claim is dismissed.

F.  Quiet Title

An action to quiet title or to remove cloud from title is an equitable action that "relies on the invalidity of the defendant's claim to property." Gordon v. W. Houston Trees, Ltd., 352 S.W.3d 32, 42 (Tex. App.--Houston [1st Dist.] 2011, no pet.). Such an action "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." Thomson v. Locke, 66 Tex. 383, 1 S.W. 112, 115 (1886).

To prevail in an action to quiet title, the plaintiff must prove and recover on the strength of his or her title, rather than the weakness or invalidity of an adversary's title. Fricks v. Hancock, 45 S.W.3d 322, 327 (Tex. App.--Corpus Christi 2001, no pet.) (quoting Alkas v. United Sav. Ass'n of Tex., Inc., 672 S.W.2d 852, 857 (Tex. App.--Corpus Christi 1984, writ ref'd

n.r.e.)). Hence, "[t]he plaintiff in a suit to quiet title must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see that the plaintiff has a right of ownership warranting judicial interference." Wright v. Matthews, 26 S.W.3d 575, 578 (Tex. App.--Beaumont 2000, pet. denied). "[T]he plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief." Morlock, L.L.C. v. JP Morgan Chase Bank, N.A., ___ F. App'x. ___, No. 12-20623, 2013 WL 2422778, at *1 (5th Cir. June 4, 2013) (per curiam) (emphasis in original) (citation omitted) (affirming dismissal of plaintiff's claim to quiet title for failure to state a claim for relief).

Here, the second amended complaint alleges only that defendants violated the notice requirements of Chapter 51 of the Texas Property Code, and questions the validity of the affidavit attached to the January 1, 2013 substitute trustee's deed. The court can find no allegations in the second amended complaint concerning the strength of plaintiffs' title or any right, title, or ownership they claim to have to superior possession, nor have plaintiffs in their responses directed the court to any such allegations.

Instead, in their responses to the motions to dismiss, plaintiffs reiterate the alleged problems with the foreclosure

18

sale and the affidavit attached to the substitute trustee's deed. Plaintiffs also posited that in response to a motion to dismiss, they are not "required to prove and present evidence showing the strength of their title." Pls.' Resp. I at 10; Pls.' Resp. II at 12.  Plaintiffs maintain that they "are merely required to allege facts and causes of action that, if they are successful . . . will result in a showing" that plaintiffs have superior title. Id.  The problem for plaintiffs, however, is that they have failed to allege any such facts in the second amended complaint. The claim to quiet title is dismissed.

G.   FDCPA Claim

    The purpose of the FDCPA is "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." Peter v. GC Servs. L.P., 310 F.3d 344, 351-52 (5th Cir. 2002) (citation omitted); see also 15 U.S.C. § 1692e. The FDCPA governs actions by "debt collectors" against "consumers."  Under the FDCPA, a "debt collector" is

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).  Section 1692g of the FDCPA requires that a

19

debt collector provide a consumer certain written disclosures in connection with any attempt to collect a debt.

Barrett Daffin's purported failure to provide the disclosures required by § 1692g forms the basis of plaintiffs' FDCPA claims. Barrett Daffin argues that this claim should be dismissed because: (1) Barrett Daffin provided the information required by 15 U.S.C. § 1692g; (2) plaintiffs failed to allege facts to show Barrett Daffin is a debt collector as defined by the FDCPA; (3) plaintiffs failed to allege that they are consumers with a consumer debt as defined by the statute; and (4) plaintiffs failed to allege that Barrett Daffin's conduct caused them injury as contemplated by the statute.

The court agrees that plaintiffs in the second amended complaint do not allege that they are consumers as defined by the statute, and that the November 15, 2012 notice provided the disclosures required by section 1692g.[7] Ignoring the contents of

---

[7]The court may consider documents attached to the motion to dismiss that are referred to, and relied on, in the complaint. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000). Attached to Barrett Daffin's motion to dismiss are: a copy of the November 15, 2012 notice sent to plaintiffs; copies of postal records showing the items mailed separately to Gary and Kelly; and, copies of the envelopes, addressed to plaintiffs' address as listed in the complaint, showing that Kelly and Gary failed to claim the items. "Service under [section 51.002] by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address." Tex. Prop. Code § 51.002(e). The items attached to Barrett Daffin's motion to dismiss comply with the statutory requirements. Although plaintiffs claim they did not receive the notices, the

(continued...)

the November 15, 2012 notice, plaintiffs instead rely on language

in the December 5, 2012 notice that states it is "in lieu of and

correction of" the November 15, 2012 notice and letter.  Second

Am. Compl., Ex. C at 4.  Plaintiffs argue that this language

renders the November 15, 2012 notice null and void.

Plaintiffs have chosen to focus on only a single phrase in

the pertinent paragraph in the December 5, 2012 notice, the

entirety of which states:

> THIS NOTICE AND LETTER IS SENT IN LIEU OF AND CORRECTION
> OF THAT CERTAIN NOTICE AND LETTER DATED 11/15/2012.
> THIS NOTICE CORRECTS THE NAME OF THE TRUSTEE AS
> REFERENCED ON THE ATTACHED NOTICE OF SALE.  ALL OTHER
> ASPECTS REMAIN THE SAME AS ON THE ORIGINAL NOTICE OF
> SALE SENT 11/15/2012.

Pls.' Second Am. Compl., Ex. C at 4 (capitalization in original)

(emphasis added).  The December 5, 2012 notice hence makes clear

that the only change or correction from the November 15 notice is

the name of the trustee; "all other aspects remain the same."

Although plaintiffs would have the change in this one detail

invalidate the remainder of the November 15 notice, they have

directed the court to no authority supporting that argument.

The November 15, 2012 notice complies with the requirements of

--------------------------------------------

(...continued)

statute provides only for constructive notice; defendants need not prove actual receipt by plaintiffs.
Onwuteaka v. Cohen, 846 S.W.2d 889, 892 (Tex. App.--Houston [1st Dist.] 1993, writ denied).

section 1692g, and plaintiffs' FDCPA claim fails as to Barrett Daffin.

Bank Defendants argue that plaintiffs have failed to allege facts sufficient to show that they are debt collectors as defined by the FDCPA. The court agrees.

In their responses, plaintiffs quoted the FDCPA definition of "debt collector" cited above, but directed the court to no facts in the second amended complaint that support an allegation that Bank Defendants fall within that definition. Instead, plaintiffs argue that the December 5, 2012 notice fails to comply with the requirements of the FDCPA. However, nothing in the second amended complaint alleges that Bank Defendants were in any way responsible for the contents of such notice. All that can be found in the second amended complaint pertaining to Bank Defendants and the FDCPA is the conclusory assertion that "[d]efendants are each a debt collector as that term is defined in Section 803(6)" of the FDCPA. Second Am. Compl. at 19-20. Such conclusory assertions, lacking any factual support, are insufficient to state a claim for relief under the FDCPA.

H.  Injunctive Relief

Defendants argued for dismissal of plaintiffs' request for injunctive relief on the ground that, if the court dismisses all of plaintiffs' other claims and causes of action, nothing remains

to support such a request.  The court is not awarding injunctive relief at this time because plaintiffs have failed to show a probable right to relief.  However, because plaintiffs' breach of contract claim survives Bank Defendants' motion to dismiss, the court is not dismissing the request for injunctive relief.

* * * *

As a result of the foregoing rulings, all that remains of the second amended complaint is plaintiffs' claim for breach of contract against M&T Bank and Bayview, without the claim for breach of the duty of good faith and fair dealing, and plaintiffs' request for injunctive relief.  All other claims and defendants are dismissed.

In the conclusion of each of their responses, plaintiffs ask that they be permitted to replead.  Rule LR 10.1(a) of the Local Civil Rules of the United States District Court for the Northern District of Texas requires that "each . . . motion, or other paper must: (a) contain on its face a title clearly identifying each included pleading, motion, or other paper; . . . ."  The responses to the motions to dismiss do not indicate on their face that they include a motion to amend.  Nor did plaintiffs inform the court of the additional facts they could plead to correct the deficiencies in the second amended complaint, and they did not attach to the responses a proposed third amended complaint.

Under these circumstances, the court is not permitting plaintiffs to replead. <u>Sullivan v. Leor Energy, LLC</u>, 600 F.3d 542, 551 (5th Cir. 2010).

Additionally, the second amended complaint represents plaintiffs' third pleading in this action. Plaintiffs filed both an original and amended petition in the state court. Upon removal, the court entered an order that described the pleading standards required by the Federal Rules of Civil Procedure, as interpreted by <u>Twombly</u> and <u>Iqbal</u>, and ordered plaintiffs to file an amended complaint consistent with those standards. Plaintiffs have thus been provided ample opportunity to correct any deficiencies in their pleadings, and the court can see nothing to be gained by allowing another amended complaint.

V.

<u>Order</u>

Therefore,

The court ORDERS that Barrett Daffin's motion to dismiss, and Bank Defendants' motion to dismiss as to FHLMC, be, and are hereby, granted, and that all claims and causes of action asserted in the above-captioned action by plaintiffs, Kelly and Gary, against Barrett Daffin and FHLMC, be, and are hereby, dismissed with prejudice.

The court determines that there is no just reason for delay

24

in, and hereby directs, entry of final judgment as to the dismissals ordered above.

The court further ORDERS that Bank Defendants' motion to dismiss be, and is hereby, granted as to all claims against M&T Bank and Bayview, except as to plaintiffs' claim for breach of contract, and that plaintiffs' claims against M&T Bank and Bayview for unreasonable collection efforts, wrongful foreclosure, trespass to real property, quiet title, and violations of the FDCPA be, and are hereby, dismissed with prejudice.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of plaintiffs' claims against M&T Bank and Bayview for unreasonable collection efforts, wrongful foreclosure, trespass to real property, quiet title, and violations of the FDCPA.

SIGNED November 22, 2013.

_____
JOHN McBRYDE
United States District Judge

25